**IN THE UNITED STATE BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| MON VIEW MINING COMPANY, | : | Bankruptcy No. 05-50219-JAD |
| Debtor. | : | Chapter 11 |
| —————————————————X | | |
| MON VIEW MINING COMPANY, | : | Adversary No. 12-02068-JAD |
| Plaintiff, | : | Doc. No. 35 |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF REVENUE, | : | |
| Defendant. | : | |
| —————————————————X | | |

**MEMORANDUM OPINION**

The matter before the Court is a *Motion for Judgment on the Pleadings* filed by the Defendant, the Pennsylvania Department of Revenue (the "Department"), pursuant to a *Complaint to Determine Tax Liability* filed by the Plaintiff, Mon View Mining Company (the "Debtor"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B). Venue is proper under 28 U.S.C. § 1409(a). For the reasons set forth below, the *Motion for Judgment on the Pleadings* is denied.

**I.**

The lead bankruptcy case under which this adversary action arises, Case No. 05-50219-JAD (the "Lead Bankruptcy Case"), was commenced by the filing of a voluntary petition under Chapter 11 of the United States Bankruptcy Code

on November 22, 2005. A declaration signed by John W. Hatch, the President of the Debtor, was attached to the petition, declaring under penalty of perjury that the information contained in the schedules (the "Bankruptcy Schedules") was true and correct. (See Case No. 05-50219-JAD, Doc. # 17).[1] The Debtor's Schedule A – Real Property includes "land from Washington County" valued at $22,000,000, and its Schedule B – Personal Property includes "coal fines 500,000 tons (est)" valued at $1,100,000, "coal inventory (approx. 20 tons)" valued at $480, and "spare parts" valued at $500,000. (See Id.).

On January 3, 2012, the official Committee of Unsecured Creditors filed its *Second Amended Chapter 11 Plan* (the "Plan") and *Second Amended Disclosure Statement* (the "Disclosure Statement"). (See Docs. # 1308, # 1310). This Court entered an *Order Confirming the Chapter 11 Plan of the Official Committee of Unsecured Creditors* (the "Order Confirming the Plan") on April 25, 2012. (See Doc. # 1348).[2]

A.

While in bankruptcy, the Debtor began efforts to effectuate a sale of its property and mineral rights located in Washington County, Pennsylvania. On May 14, 2008, after a sale hearing was held on May 9, 2008, this Court entered

---

[1] All future docket citations refer to Lead Bankruptcy Case No. 05-50219-JAD, unless otherwise specifically noted.

[2] Pursuant to its terms, the Order Confirming the Plan provided that it "shall not become effective unless and until the date on which counsel for the Debtor has filed an affidavit to the effect that the Debtor has filed all delinquent tax returns with the respective taxing bodies." (See Doc. # 1348, ¶ 5.6, § 6). This Court issued an Order on September 18, 2012 requiring the Debtor to "file and serve on the appropriate taxing authorities all delinquent tax returns no later than October 15, 2012." (See Doc. # 1413).

an *Order Authorizing Public Sale Auction of Real and Personal Property* (the "Order Authorizing Sale") on May 16, 2008 (See Doc. # 556), which confirmed "on the recommendation of the Movant (Debtor's counsel)" the sale of all the Debtor's real and personal property to CRG Energy, Inc. ("CRG") for a sales price of $25,000,000. The sale (the "2008 Sale") was subject to a secured promissory note (the "Note") requiring $1,000,000 payable at the closing and $2,000,000 payable 90 and 180 days from the date of closing, and the balance of $20,000,000 payable over ten years in equal monthly installments. (See Id.) An asset purchase agreement (the "Asset Purchase Agreement") was filed the same day. (See Doc. # 557). On or about July 30, 2008, CRG assigned its right to its affiliate, Coal Financing, LLC ("Coal"). (See Doc. # 806).

As a result of the 2008 Sale, on August 4, 2008, two deeds (one for the surface tracts and one for the coal tracts) were recorded in Washington County. State and local realty transfer taxes totaling $219,621.95 were paid upon their recording. (See Case No. 12-02068-JAD, Doc. # 32, Exhibit 1). State and local realty transfer taxes were not paid on the $25,000,000 sales price, but rather on $10,791,170, the total computed value[3] of the two tracts. Coal's counsel determined the realty transfer tax liability using an allocation (the "Purchase Price Allocation") contained in Article 2.10 of the Asset Purchase Agreement, which refers to Schedule 2.11. (See Doc. # 557). Schedule 2.11 allocated the $25,000,000 sales price as follows: $10,791,170 to real estate, including

---

[3] "Computed value" is defined in Pennsylvania as "[t]he amount determined by multiplying the assessed value of the realty for local real estate tax purposes by the common level ratio factor of the taxing district." 61 Pa. Code § 91.131.

$5,141,190 to surface real estate and $5,649,980 to coal/minerals real estate; and $14,208,830 to personal property, including $7,500,000 to machinery, equipment and miscellaneous, and $6,708,830 to gob piles and coal fines. (See Case No. 12-02068, Doc. # 32, Exhibit 9, unnumbered p. 5).

Subsequently, Coal and CRG defaulted on the payment obligations under the Asset Purchase Agreement and Note (See Doc. #506; Case No. 08-02557-JAD, Doc. # 1), prompting the Debtor to file a *Complaint in Confession of Judgment* against Coal and CRG in Adversary Case No. 08-02557 (See Case No. 08-02557-JAD, Doc. #1). This Court entered a judgment against Coal and CRG for $25,300,000 on November 25, 2008 (See Case No. 08-02557-JAD, Doc. # 3), which the Debtor later entered against Coal and CRG in District Court at Case No. 09-00134 (See Case No. 09-00134-DWA, Doc. # 1). The Debtor filed a *Motion to Schedule Execution Sale*, which the District Court granted on June 8, 2009. (See Case No. 09-00134-DWA, Docs. # 4, # 6). Pursuant to these actions, a U.S. Marshall executed a deed conveying the property back to the Debtor.

The Debtor filed a *Motion to Sell Real Property* on December 8, 2009, which this Court granted on May 10, 2010. (See Docs. # 984, # 1134). The District Court issued an *Order Approving Sale* on June 17, 2010 (See Doc. # 1177), and the assets were then sold to A.T. Massey Coal Company, Inc. ("Massey") and Canestrale Environmental Control Corporation ("Canestrale").

On June 3, 2009, the Department filed an administrative claim in the Lead Bankruptcy Case.[4] The basis for the claim is allegedly outstanding realty transfer taxes using the $22,000,000 property value set forth in Debtor's Schedule A. The Department subsequently amended the claim on October 14, 2011 and May 18, 2012 to both update the realty transfer tax liability and include estimated Pennsylvania corporation tax liabilities for Debtor's unfiled corporation tax returns. (See Case No. 12-02068, Doc. # 32, Exhibit 7).[5]

### B.

On February 12, 2012, the Debtor filed a *Complaint to Determine Tax Liability* against the Department and the United States seeking relief under 11 U.S.C. §§ 105 and 505, thereby initiating this adversary proceeding (the "Adversary Case"). In the *Complaint,* the Debtor, claiming that CRG and Coal knowingly misrepresented that they had funds available to consummate the 2008 Sale, averred that the sale to CRG and its affiliate was fraudulent and

---

[4] It appears that the sole purpose of the Department's claim is to seek the payment of realty transfer taxes on that portion of the 2008 Sale price which have not yet been paid. Nothing of record suggests that the Department is seeking the payment of any taxes related to the 2009 execution sale or the 2010 re-transfer of the Debtor's assets to Massey and Canestrale.

[5] The Department's Amended Administrative Claim # 71-3 filed May 18, 2012 is for a total claim amount of $319,501.94, $304,509.50 of which represents the amount the Department alleges the Debtor still owes in realty transfer taxes. The Department calculated the realty transfer tax obligations by subtracting the portion of the sale price on which realty transfer taxes were already paid at the time the deed was recorded ($10,791,170) from the sales price reflected on the deed ($25,000,000), multiplying that number ($14,208,830) by 2% (representing 1% state tax and 1% local tax) and adding interest ($20,292) and penalties ($40), for a final amount of $304,509.50.

sought to eliminate any transfer tax obligations. (See Case No. 12-02068-JAD, Doc. # 1).[6]

The Department filed a *Motion to Dismiss* based on several grounds (See Doc. # 5), as did the United States (See Doc. # 8). Subsequently, the Debtor, through responsive pleadings and at a hearing on April 24, 2012, began modifying its prayer for relief.[7] As such, this Court granted the *Motion to Dismiss* without prejudice on April 24, 2012 and ordered the Debtor to file an amended complaint within 21 days. (See Doc. # 20).

The Debtor filed an *Amended Complaint to Determine Tax Liability* on May 15, 2012, seeking "to eliminate any additional transfer tax obligation of the sale to CRG and to object to the administrative claim of the [Department] for real estate transfer taxes." (See Doc. # 24, ¶ 25). The Debtor asserts that "[t]he real estate taxes paid at closing (based on a Realty Transfer Tax Statement of Value for Real Estate of $10,791,170) represented the fair market value of the real estate in the transaction" and that "no additional transfer taxes … are due." (See Id. at ¶¶ 19, 23).

---

[6] All future docket citations refer to Adversary Case No. 12-02068-JAD, unless otherwise specifically noted.

[7] In the Debtor's *Response to the Department's Motion to Dismiss*, the Debtor avers it "is asking … to … determine that the Debtor only has to include the amounts actually received from 2008 sales in its annual tax return and limit any liability on realty transfer taxes to the amounts already paid" and that "[t]he purpose of the action is to contest the administrative claim of PA DOR and to determine the amount of reportable income in 2008." (See Doc. # 15). In the Debtor's *Response to the United States' Motion to Dismiss*, the Debtor asserts it is "requesting the Bankruptcy Court to determine that the buyer perpetrated a fraud on the Court and the Debtor and determine that equitable principals allow the Debtor to include only the amounts actually received as income in 2008." (See Doc. # 16).

The Department filed a *Motion for Judgment on the Pleadings* on June 27, 2012, alleging in its *Memorandum* that the Debtor does not have a cause of action against the Department upon which relief may be granted, that the Debtor is judicially estopped from arguing that the value of the property is $10,791,170, and that the Debtor is collaterally estopped from re-alleging the fraud arguments it made in its initial *Complaint.* (See Doc. # 35, pp. 20, 48-49).

The Debtor filed a *Response to the Motion for Judgment on the Pleadings* on July 23, 2012, averring that material facts are in dispute, specifically in regards to the value of the property. (See Doc. # 43). The Debtor believes approximately $13,000,000 of the sales price was paid in exchange for personal property and requests that realty transfer taxes be paid only on the value of the transferred real estate. (Id.) The Department filed a *Response to the Response* on July 27, 2012 (See Doc. # 44), and a hearing was held on July 31, 2012. The matter is now ripe for discussion.

## II.

After pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. See Fed. R. Civ. P. 12(c) (applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7012(b)). A Rule 12(c) motion is governed by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). "The test for reviewing a motion to dismiss for failure to state a claim is whether under a reasonable reading of the pleadings the plaintiff may be entitled to relief." Simon v.

Cebrick, 53 F.3d 17, 19 (3d Cir. 1995). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974).

A motion for judgment on the pleadings will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988), quoting Society Hill Civic Association v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980). In considering a motion for judgment on the pleadings, courts are required to "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Jablonski, 863 F.2d at 290-91, quoting Society Hill Civic Association, 632 F.2d at 1054.

The issue before the Court is whether, under a reasonable reading of the pleadings, the Debtor has sufficiently set out a claim upon which relief can be granted. As set forth more fully below, because a material issue of fact remains, and because the Debtor is entitled to offer evidence to support its claims, the Debtor has sufficiently set out a claim upon which relief can be granted, and the Department's *Motion for Judgment on the Pleadings* must be denied.

### A.

The Debtor avers that there is a material dispute as to the value of the realty and personalty transferred in the 2008 Sale. Arguing that a substantial amount of the purchase price of the 2008 Sale was allocated to personal

property, which is not subject to realty transfer taxes, the Debtor asserts that its realty transfer tax liability should be based only on the computed value of the real estate as set forth in the Asset Purchase Agreement, or $10,791.170. Because the Debtor already paid realty transfer taxes on the computed value, the Debtor argues that no additional realty transfer tax is due to the Department, and the Department's Administrative Proof of Claim is based on an incorrect value. (See Doc. # 26, p. 25, Doc. # 32, Exhibit 7).

In response, the Department avers they are required by statute to use the $25,000,000 sales price as the value for realty transfer tax purposes. (See Doc. # 35, Attachment 1, *Memorandum of Law*, pp. 4-5). The Pennsylvania Realty Transfer Tax Act provides that "[e]very person who ... presents for recording any document ..., shall be subject to pay for and in respect to the transaction ..., a State tax at the rate of one per cent of the value of the real estate represented by such document ..." 72 Pa. Stat. Ann. § 8101-C. The statute defines "document" as "[a]ny deed, ... or writing which conveys, transfers, ... , or evidences any transfer of title to real estate," and "real estate" as "[a]ny lands ... within this Commonwealth, including, without limitation, buildings, structures, fixtures, mines, minerals, oil, gas, quarries, ..., trees and other improvements, immovable or interests which by custom, usage or law pass with a conveyance of land..." Id. "Value" is defined as the following:

> (1) In the case of any bona fide sale of real estate at arm's length for actual monetary worth, the amount of the actual consideration therefor, paid or to be paid... (2) In the case of a gift, sale by execution upon a judgment or upon the foreclosure of a mortgage by a judicial officer, ... the actual monetary worth of the real estate determined by adjusting the assessed value of the real estate for

> local real estate tax purposes for the common level ration of assessed values to market values of the taxing district as established by the State Tax Equalization Board, or a commensurate part of the assessment where the assessment includes other real estate.

Id. "Bona fide sales transaction" is defined as "[a] transfer between a buyer, willing but not obligated to buy, and a seller, willing but not obligated to sell, each acting with adverse economic interests at arm's length in his own self-interest and with knowledge of the value of the realty transferred." 61 Pa. Code § 91.131.

The Department argues that because the sale was bona fide, the value is the "amount of the actual consideration therefor, paid or to be paid." 72 Pa. Stat. Ann. § 8101-C. However, the Department admitted at the July 31, 2012 hearing on this matter that, while there is a "presumption of correctness" of the Department's assessment, that presumption can be rebutted. (See Audio Recording of Hearing Held in Courtroom D, July 31, 2012 (11:31 AM)). The Department also asserted in the hearing that an allocation schedule may be used as the basis of the realty transfer tax assessment, if this allocation can be supported by additional evidence. (See id. at (11:23 – 11:24 AM); See also Case No. 05-50219, Doc. # 998, ¶ 38, § b). According to the Department, the Debtor failed to respond to several requests for this supporting documentation, and as such, the Department assessed its realty tax pursuant to the statute, using the entire purchase price as the basis. (See Doc. # 998, ¶ 37, §§ f, g).

Notwithstanding its failure to provide additional information at the Department's request, the Debtor argues that the Department must consider

-10-

the large amount of personal property that was transferred in the sale, including "coal fines, gob pile and equipment," which the Debtor avers accounted for approximately $13,000,000 of the $25,000,000 sales price. (See Doc. # 43, ¶ 2).

The Department asserts that the full purchase value of the 2008 Sale is subject to the realty transfer tax, while the Debtor argues that a significant portion of the property transferred in the 2008 Sale was personal property and not subject to the realty transfer tax. Thus, a material fact regarding the value of the real and personal property transferred in the 2008 Sale is still in dispute.

### B.

Although a material fact remains in dispute, the Department alleges that the Debtor is judicially estopped from offering evidence to support its claims that personal property was transferred in the 2008 Sale, and thus, the *Motion for Judgment on the Pleadings* should be granted. An estoppel defense can be pleaded affirmatively and determined on a pretrial motion for judgment on the pleadings. See Blonder-Tongue Laboratories, Inc. v. University of Illinois, 402 U.S. 313, 91 S.Ct. 1434, 1452, 28 L.Ed.2d 788 (1971).

Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001), citing Davis

v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). This equitable doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. at 749, citing Pegram v. Herdich, 530 U.S. 211, 227, n.8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). "The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. at 743. Judicial estoppel is an "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.1988).

While a court's decision to apply judicial estoppel is not subject to "inflexible prerequisites or an exhaustive formula," New Hampshire v. Maine, 532 U.S. at 751, Supreme Court *and Third Circuit) precedent establishes that some aggravating factor, and not mere inconsistency, is necessary for the application of judicial estoppel. Chao v. Roy's Const., Inc., 517 F.3d 180, 186, n. 5 (3d Cir. 2008). The Supreme Court has identified several factors to consider when determining whether to apply judicial estoppel, including whether a party adopted inconsistent positions, whether the party succeeded in persuading a court to accept that party's earlier position, and whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. at 750-51.

Cases emanating from the Third Circuit Court of Appeals require three elements to be met before a court may apply judicial estoppel:

> (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 777-78 (2001). The Montrose court, guided by Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), held "that a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." Id. at 778.

The Department alleges that the Debtor's confession of judgment, the Debtor's support for a $25,000,000 sales price for the 2008 Sale, and the Debtor's Bankruptcy Schedules are all inconsistent with the Debtor's current position that the value of real estate transferred in the 2008 Sale is $10,791,170. However, "mere inconsistency" alone cannot support the invocation of judicial estoppel. See Chao v. Roy's Const., Inc., 517 F.3d at 186. Because no court or agency ever accepted or adopted any prior position regarding asset valuation proposed by the Debtor, this Court finds that judicial estoppel cannot apply.

The Department avers that the Debtor is estopped from asserting that the realty transferred in the 2008 Sale was valued at $10,791,170 because "in its earlier proceedings, when relying on and confirming the validity of the 2008 Sale, the Debtor confessed judgment and reacquired its assets." (See Doc. # 35,

Attachment 1, p. 36). The Department cannot prove that a court or agency accepted the Debtor's position regarding the valuation of personalty and realty when the Debtor confessed judgment, as the Debtor confessed judgment on the Note, which did not assert or adopt any valuation of personalty or realty but rather set forth a single amount owed to the Debtor pursuant to the 2008 Sale. (See Case No. 08-02557, Doc. # 1, Exhibit A, *Note of Guaranty*).

Similarly, the Department cites the Debtor's support for a $25,000,000 bid for the 2008 Sale as an additional reason for this Court to invoke judicial estoppel. (See id. at p. 49). However, in endorsing the $25,000,000 sale price, the Debtor never asserted or adopted any valuation of personalty or realty which was adopted or accepted by a court or agency. Furthermore, the resulting Order Approving Sale also does not assert or adopt any asset valuation. Thus, neither supports the Department's argument that a court or agency accepted or adopted a prior inconsistent position of the Debtor regarding valuation.

Lastly, the Department asserts that this Court should invoke judicial estoppel because the Debtor's Bankruptcy Schedules, which identified $22,000,000 of real property and $2,001,883 of personal property, are inconsistent with the Debtor's current assertion that approximately $13,000,000 of personal property was transferred in the 2008 Sale.

In support of this argument, the Department directs the Court's attention to Stroh v. Grant (In re Stroh), 34 F. Appx. 562 (9th Cir. 2002), which held that a Chapter 7 debtor's claims to prepetition and postpetition earnings

-14-

from an alleged partnership were barred by the doctrine of judicial estoppel, because the debtor specifically declared in his bankruptcy schedules that he had no partnership interests. The instant matter is clearly distinguishable from Stroh, as it involves a valuation of assets, not an omission of a claim. The Department has failed to prove to this Court, or to provide any supporting case law, that any binding effect should be afforded to a valuation included in the Debtor's Bankruptcy Schedules.

The Department has also failed to show how a court or agency has "adopted" the valuations contained in the Debtor's Bankruptcy Schedules. The Bankruptcy Schedules were filed in December of 2005, and the Order Confirming the Plan was entered in April of 2012. The Order Confirming the Plan, the Plan and the Disclosure Statement do not refer to the valuations in the Bankruptcy Schedules, nor do they refer to the 2008 Sale; rather, they all refer to the subsequent sale of the Debtor's assets to Massey and Canestrale in August of 2010. (See Case No. 05-50219-JAD: Doc. # 1384, ¶ 17; Doc. # 1308, Article 1.11, Article 4.1(a) – (f); Doc. # 1310, Article I, § 6(b) – (f), Article IV). Thus, the Plan does not "accept" the $22,000,000 real estate valuation included in the Debtor's Schedule A, and no court or agency has otherwise "accepted" the asset valuations in the Bankruptcy Schedules.

Furthermore, "application of the doctrine of judicial estoppel as applied to estimates of value in a bankruptcy is considered with a different, more relaxed, view." Kasbee v. Huntington National Bank (In re Kasbee), 466 B.R. 719, 726. "It is well settled that 'estimates of value made during bankruptcy

proceedings are binding only for the purpose of a specific hearing ... [do] not have a res judicata effect' in subsequent hearings." Id., citing Suntrust Bank v. Blue Water Fiber, L.P., 93 F.Supp.2d 787, 796 (E.D.Mich.2000).

Thus, because no court or agency has "accepted or adopted" the Debtor's prior positions regarding valuation, this Court cannot apply the doctrine of judicial estoppel.

### C.

The Department also argues that the Debtor is "collaterally estopped from re[-]alleging fraud as the Court dismissed the [Debtor's] first *Complaint* based on the Department's [M]otion to [D]ismiss which averred the invalidity of the Debtor's fraudulent arguments." (See Doc. # 35, Attachment 1, p. 4) (italics added).

The doctrine of collateral estoppel bars an action when the foundation upon which the claims rest has already been litigated. CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187 (3d Cir.1999). Pursuant to this doctrine, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir.2006) (quoting Restatement (Second) of Judgments § 27 (1982)). Thus, collateral estoppel "does not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues necessarily determined

between the parties in a first proceeding that has become a final judgment." Com. v. Holder, 569 Pa. 474, 480, 805 A.2d 499, 502 (2002), citing Commonwealth v. Smith, 518 Pa. 15, 540 A.2d 246, 251 (1988).

Under Pennsylvania law, collateral estoppel applies if the following elements are present:

> (1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

R & R Capital LLC v. Merritt, 426 F. App'x 85, 89 (3d Cir. 2011) cert. denied, 132 S. Ct. 763, 181 L. Ed. 2d 484 (U.S. 2011), citing Rue v. K–Mart Corp., 552 Pa. 13, 713 A.2d 82, 84 (1998).

The Debtor is not collaterally estopped from alleging fraud because the original Complaint was dismissed without prejudice, and therefore did not result in a final judgment on the merits. "Generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action. Only if the plaintiff cannot amend or declares his intention to stand on his complaint does the order become final and appealable." Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976). Because the Debtor's original *Complaint* against the Department was dismissed without prejudice with the specific intent of allowing the Debtor to amend its *Complaint*, there was no

"final judgment on the merits" to substantiate the application of collateral estoppel to the Debtor's fraud claims.

The doctrine of collateral estoppel would also not bar the Debtor from offering evidence to support any claims regarding the valuation of the personal property transferred in the 2008 Sale, because the Debtor has never litigated the valuation of the real and personal property transferred in the 2008 Sale, and there was no prior action regarding the issue of asset valuation resulting in a final judgment on the merits. The only assertion the Debtor made regarding the valuation of the personalty and realty transferred in the 2008 Sale which is inconsistent with its current position is contained within the Debtor's Bankruptcy Schedules, and as discussed in the above, the Debtor's Chapter 11 Plan does not adopt, or even refer to, the valuations contained in the Debtor's Bankruptcy Schedules. Thus, collateral estoppel cannot apply.

### III.

The Department's *Motion for Judgment on the Pleadings* is denied. The Debtor is entitled to produce evidence to this Court to support its argument that personal property was transferred in the 2008 Sale and the realty transfer tax assessment should not be based on a real property value of $25,000,000. An appropriate Order shall be entered.

**Date**: September 28, 2012   /s/ Jeffery A. Deller
　　　　　　　　　　　　　　　**JEFFERY A. DELLER**
　　　　　　　　　　　　　　　United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
    Donald R. Calaiaro, Esq.
    Leonard F. Spagnolo, Esq.
    Christos A. Katsaounis, Esq.
    Office of the United States Trustee